CROWN TRAVEL SERVICE, INC.,
Plaintiff,

v.

AIR TRAFFIC CONFERENCE OF AMERICA, a DIVISION OF AIR TRANSPORT ASSOCIATION (consisting of more than 7 members), and United Air Lines, Defendants.

Civ. A. No. 559-67.

United States District Court
D. New Jersey.

June 29, 1967.

Krieger, Chodash & Politan, Jersey City, N. J., for plaintiff by Harold Krieger, Jersey City, N. J.

Stryker, Tams & Dill, Newark, N. J., for defendants by Burtis W. Horner, Newark, N. J.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WORTENDYKE, District Judge:

This action was instituted in the Chancery Division of the New Jersey Superior Court and removed to this Court upon jurisdictional grounds. On May 10, 1967, the Honorable Robert A. Matthews, Judge of the Superior Court of New Jersey, Chancery Division, issued an *ex parte* temporary restraining order against the defendants requiring the return of ticket-issuing paraphernalia to the plaintiff, and after oral argument was heard on May 15, 1967, granted an interlocutory injunction. On May 23, 1967, the defendants filed a petition to remove this case to this Court and moved for summary judgment, or in the alternative, made application to dissolve the interlocutory injunction ordered by the State Court.

Based upon the pleadings, affidavits and briefs filed, together with the oral argument before this Court, I make the following findings of fact:

1. In 1965, the plaintiff, Crown Travel Service, Inc., entered into a valid sales agency contract with the defendant, Air Traffic Conference of America, an organization composed of domestic airlines, by which it was permitted to issue tickets of the member airlines to the public.

2. Paragraph 26 of this agreement provides:

"26. Subject to Carrier's Obligations, etc. under Air Traffic Conference Agency Resolution:

The agent recognizes that the Carrier is party to the Air Traffic Conference Agency Resolution and as such is entitled to certain rights and is subject to certain obligations under the provisions of said Resolution. The Agent further recognizes that this Agreement is entered into for an indefinite period and that it may be terminated at any time by the Carrier, as provided in Paragraph 24 hereof, for any reason which is deemed sufficient by the Carrier,

and that the Carrier is under no obligation to justify such termination. The Agent agrees that this Agreement and the rights and obligations of the parties hereto are subject to the said Air Traffic Conference Agency Resolution and the rights and obligations of the Carrier thereunder, and that the Agent shall have no recourse against the Carrier, or the Air Traffic Conference of America, or any member of the Air Traffic Conference of America, or against any officer, employee, agent or servant of any of them, by reason of any action taken in accordance with the provisions of the said Resolution, or by any reason of any termination of this Agreement in accordance with its provisions."

3.    Section VII.C of the Air Traffic Conference Resolution 80.10, which governs late remittances by travel agents for tickets issued, is by virtue of Paragraph 26 a part of the contract signed by the plaintiff travel agent.    The provisions of this section were approved by the Civil Aeronautics Board on April 24, 1964 (Order No. E-20741) and on October 8, 1964 (Order No. E-21380).    This section provides:

"16.    Section VII.C, of Resolution 80.10 is amended to read:

"C.1.    If the sales report and/or remittance due from any agent is not transmitted to the designated area bank as required by Paragraph 5 of the Sales Agency Agreement, the Executive Secretary shall, on being notified of such delinquency, immediately send to such Agent by certified or registered mail, return receipt requested, a letter in the form prescribed from time to time by the Agency Committee.

2.    The Executive Secretary shall maintain, for each report period, a list of the names and addresses of all Agents (a) to whom such letters, not afterwards rescinded, were sent, or (b) whose remittance check was dishonored by the drawee bank.    A copy of such list shall be sent to each member following the close of the period.

3.    If the name of any Agent appears on such lists four times during any twelve consecutive months (for which purpose a dishonored check shall count as two such appearances), the Executive Secretary shall promptly so notify all members, the Agent, and the Secretary-AFAC, who shall promptly withdraw all ticket forms and exchange orders supplied by him to such Agent, and all airline identification plates(s) supplied by members to such Agent, and each member who has appointed such Agent shall, within fourteen days of notice from the Executive Secretary, revoke any authorization previously given to such agent to draw its own exchange orders on such members.

4.    The Secretary-AFAC shall not thereafter provide such Agent with supplies of ticket forms or exchange orders, and no member shall thereafter supply such Agent with its airline identification plates(s) or authorize such Agent to draw its own exchange orders on such member, until after the date on which the Executive Secretary mails a notice to each member that the Agent has been reinstated pursuant to one of the following procedures:

a.    The Agency Committee, at a duly constituted meeting and on at least forty-five days notice to all Members, has reviewed the eligibility of the Agent pursuant to Section IV.I (or, for Agents located in Canada, Section V.G) of this Resolution, and has approved such Agent; or

b.    At the request of the Agent, on or after thirty days from the date of transmittal of the notice prescribed by Section VII.C.3 above, the Executive Secretary shall transmit to all appointing Members the Agent's request for reinstatement, accompanied by the Agent's written explanation of such items as the reasons for each late remittance, the measures

he has taken to avoid recurrence of late remittances, and justification for prompt reinstatement; thereafter, unless within fifteen days an appointing Member requests that the matter be held for review by the Agency Committee, the Agent shall be deemed approved for reinstatement."

4. The plaintiff made five late remittances to the designated area bank within a twelve month period and was upon each occasion duly notified of such delinquency. These late remittances were for the sales periods ending July 31, 1966, January 20, 1967, February 10, 1967, February 20, 1967 and February 28, 1967. In addition, on a number of other occasions during the period July 31, 1966 to February 28, 1967, late remittances were received from the plaintiff.

5. Pursuant to Regulation 80.10, Section VII.C the plaintiff was ordered to cease operations. The plaintiff was duly notified by letter from the defendant, Air Traffic Conference, dated March 14, 1967, of its suspension and was directed to surrender all supplies of standard tickets, miscellaneous charges orders, other forms and identification plates. This paraphernalia needed for the sale and issuance of airline tickets was surrendered by the plaintiff on March 23, 1967.

6. At the end of the required thirty-day interval, the plaintiff sought reinstatement pursuant to the procedure provided for in sub-section 4(b) of Section VII.C of Air Traffic Conference Resolution 80.10. During the remaining 15 days of the total of 45 days of suspension, on April 28, 1967, the defendant, United Air Lines, as a member of the ATC exercised its right to request that the matter be held for review by the Agency Committee at the next duly constituted meeting scheduled for July 11, 1967. The determination of the Agency Committee is then subject to arbitration under the provisions of Paragraph 27 of the Sales Agency contract signed by the plaintiff.

Based upon the above findings of fact, I make the following conclusions of law:

1. This Court has jurisdiction of this action and of the parties thereto.

2. The request of the defendant, United Air Lines, that the suspension of the plaintiff be held for review by the Agency Committee constituted the proper exercise of a contract right to which the plaintiff was bound by Paragraph 26 of its Sales Agency Agreement.

3. There is no genuine issue of material fact and defendants are entitled to judgment as a matter of law.

4. Summary judgment should be granted in favor of the defendants due to the failure of the plaintiff to state a claim upon which relief can be granted.

5. The injunction originally granted by the state court in favor of the plaintiff will continue until the expiration of the 30-day period of appeal from the date of entry of an appropriate judgment. Submit Order accordingly.